UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **GERALD DUFRESNE**<br><br>**Plaintiff,**<br><br>v.<br><br>**FREEDOM MORTGAGE CORPORATION**<br><br>**Defendant.** | **CASE NO: 3:25-cv-01035-KAD**<br><br><br>**October 3, 2025** |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

Plaintiff Gerald Dufresne submits this memorandum in opposition to Defendant Freedom Mortgage Corporation's Motion to Dismiss. This case arises from Defendant's mishandling of Mr. Dufresne's VA-insured mortgage, including rejecting his timely payments, misrepresenting his account status, failing to properly administer his escrow account, and initiating a wrongful foreclosure. Defendant then compounded these errors by failing to adequately respond to Mr. Dufresne's qualified written request. These actions violate both the Real Estate Settlement Procedures Act (RESPA) and the Connecticut Unfair Trade Practices Act (CUTPA), as thoroughly detailed in his Complaint. Because Mr. Dufresne has stated valid claims under both state and federal law, Defendant's motion should be denied.

### STATEMENT OF FACTS

Mr. Dufresne is a disabled veteran with a mortgage loan insured by the Department of Veterans Affairs ("VA"). Complaint ¶¶ 9, 12. Defendant, Freedom Mortgage, services his mortgage loan. Compl. ¶ 11. Mr. Dufresne lives with a traumatic brain injury sustained during his service in the military. *Id*. ¶¶ 15-16. As this injury impacts his executive functions, he uses

automatic bill pay from his bank account for his mortgage payment, to reduce the administrative tasks he must manage monthly. *Id*. ¶¶ 15-17, 19.

### *Defendant Provided Mr. Dufresne Conflicting Information Regarding the Status of his Mortgage Account.*

In December 2022, Defendant refused Mr. Dufresne's regular mortgage payment. Compl. ¶ 21. When Mr. Dufresne contacted Defendant to ask why his payment was returned to his account, Defendant told him to make a payment of $1,356.47, over the phone in order to bring his account current. *Id*. ¶ 22. During the same call, Defendant told him to ignore any contradictory correspondence he might receive because his account was now current. *Id*. ¶ 22-23. This began a cycle that continued in January, February, March, and April 2023. Each month, Mr. Dufresne called Defendant to make his payment by phone. And each month, Defendant accepted his payment and then returned it weeks later. *Id*. ¶ 24-31. Despite Mr. Dufresne's efforts to make his monthly payments, Freedom reported the payments it rejected as missed payments to credit reporting agencies and the mortgage as in default. *Id*. ¶ 32-33.

### *Defendant Filed an Improper and Unwarranted Foreclosure Action Against Mr. Dufresne.*

On various occasions from December 2022 through April 2023, Mr. Dufresne asked Defendant to explain why his monthly payments were being rejected and his account marked as in default. *Id*. ¶ 25-35. Defendant never provided him a substantive response, yet on May 5, 2023, a foreclosure action started against him. *Id*. ¶ 36. In a letter dated May 5, 2023, Defendant claimed escrow adjustments in October 2020 changed Mr. Dufresne's payment amount, but did not include a copy of the relevant escrow analysis statement. *Id*. ¶ 37; *see also*, Exhibit 1 (Escrow Letter). Mr. Dufresne never received notice of this payment change and instead was repeatedly given inaccurate information over the phone by Defendant. *Id*. ¶ 38.

In December 2023, while navigating the foreclosure mediation process, Mr. Dufresne again wrote to Defendant to try to get to the bottom of the payment confusion. Compl. ¶ 40; *see also,* Exhibit 2 (Plaintiff's Letter). On January 26, 2024, Defendant responded by blaming Mr. Dufresne for the payment errors and including records from another borrower's account. *Id.* ¶ 41; *see also,* Exhibit 3 (Defendant's Response).

### *Defendant Failed to Properly Investigate Mr. Dufresne's Account After Receiving a QWR under RESPA.*

On March 22, 2024, Mr. Dufresne sent Defendant a qualified written request (QWR) under RESPA.[1] *Id.* ¶ 42; *see also,* Compl., Ex. 1 (Plaintiff's QWR). In it, he detailed the payments he made between December 2022 and April 2023, along with the misleading and inconsistent communications he received from Defendant. *Id.* ¶ 43. He attached bank statements showing that his payments were returned, explained that Defendant had improperly initiated foreclosure, and requested records including correspondence, communication logs, system notes, call notes, and a full accounting of all fees and charges tied to the payments Defendant had rejected. *Id.* ¶ 44.

On April 30, 2024, Defendant replied and claimed it had not received any payments from Mr. Dufresne since his $1,050.41 payment on December 5, 2022, even though, the bank records he provided showed a $1,356.47 payment made on December 1 and debited on December 6, 2022. Compl. ¶¶ 47-48. Defendant refused to explain this discrepancy in its records, and ignored Mr. Dufresne's request for call logs, system notes, and an explanation of fees and charges to his account. *Id.* ¶¶ 50-51; *see also,* Def.'s Exhibit A.

---

[1] "QWR" and "notice of error" will be used interchangeably throughout and both refer to the letter Mr. Dufresne's sent the Defendant on March 22, 2024, which is attached as Exhibit 1 to Plaintiff's Complaint.

Lacking any explanation from Defendant for the rejected payments, the default status, or the fees and charges added to his account, Mr. Dufresne had no choice but to pay $39,951.12 to reinstate his loan. *Id*. ¶¶ 60-61. This included late fees, attorney's fees, court costs, property inspection fees, filing fees, and title search fees totaling more than $8,000. *Id*. ¶¶ 59-61. From December 2022 through the conclusion of his foreclosure in August 2024, Mr. Dufresne suffered severe emotional distress that exacerbated his mental health condition and cognitive challenges related to his traumatic brain injury. Compl. ¶¶ 62-63, 87. He also sustained damage to his credit and financial strain resulting from the lump sum payment he made. *Id*. ¶ 32, 78.

## LEGAL STANDARD

In evaluating a 12(b)(6) motion to dismiss, courts accept as true all the factual allegations in the complaint and draw "all inferences in the plaintiff's favor." *See Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). A complaint need only contain "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible so long as the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Biro*, 807 F.3d at 544 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Factual disputes "do not factor into a plausibility analysis." *Tucker v. Am. Int'l Group*, 936 F. Supp 2d. 1, 6 (D. Conn. 2013). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Velez v. Levey*, 401 F.3d 75, 80 (2d Cir. 2005).

**ARGUMENT**

**I.    Mr. Dufresne Properly Pleaded a Claim under RESPA and Regulation X.**

RESPA is a consumer protection statute that provides mortgagors with a right to information about their loan account and their servicer's stewardship of it, and the right to assert errors and request an investigation of errors on their account. Under RESPA, when a servicer receives a QWR asserting an error, a servicer must conduct a "reasonable investigation," provide the borrower an explanation of whether an error occurred, and offer any supporting documentation it relied upon in its investigation. *See* 12 C.F.R. § 1024.35(e)(1)(i)(B).

In his complaint, Mr. Dufresne carefully details Defendant's violation of RESPA and Regulation X and specifically pleads that it failed to: (1) conduct a reasonable investigation into the payment application errors he complained about in March 2024, (2) explain whether or not an error occurred, and (3) provide him the documentation relied on in its investigation. Compl. ¶¶ 67-68. Additionally, Mr. Dufresne alleges that he suffered actual damages, both financial and emotional, because of Defendant's violation. *Id*. ¶ 52-66.

Defendant claims that Mr. Dufresne's RESPA claims should be dismissed because (i) Freedom properly responded to the issues in the letter concerning servicing, and (ii) Mr. Dufresne failed to allege actual damages proximately caused by Freedom's alleged failures. Def.'s Memorandum of Law, p. 4. However, the complaint, taken in the light most favorable to Mr. Dufresne, disproves both arguments.

    A.    **Defendant Withheld Account Records Mr. Dufresne Properly Requested in Violation of RESPA.**

On March 22, 2024, Mr. Dufresne sent Defendant a QWR under RESPA. *See* Compl., Exhibit 1 (Plaintiff's QWR). He asked Defendant for information explaining why his payments were rejected, why his account was in default, and why Defendant's representatives gave him

misleading information. Since he made each of the payments at issue over the phone, Mr. Dufresne also requested relevant call logs, communication records, and an accounting of fees charged to his account. *Id.*, *see also*, Compl. ¶¶ 22-30. Defendant admits that it withheld call logs, system notes, and communication records in its response to the QWR, Def.'s Memorandum of Law, p. 6, an act that Mr. Dufresne has pleaded constitutes a violation of RESPA and Regulation X. *See* Compl. ¶¶ 50, 67-69.

Defendant contends that it properly responded to issues concerning servicing, and that "the March 2024 letter does not specify the call logs, system logs, or call recordings requested had anything to do with servicing. As a result, the request is improper and Freedom complied with RESPA in declining to respond." Def.'s Memorandum of Law, p. 6. This is not a bare informational injury; the withheld records were directly tied to Mr. Dufresne's phone payments, and their absence prevented him from curing payment errors and avoiding foreclosure, causing concrete financial and emotional harm.

Although the Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial" *Velez v. Levey*, *supra*, at 80, even a cursory review of Mr. Dufresne's QWR reveals that he called Defendant to make his payments, therefore communication logs, call notes, and system notes would relate to the payment errors he complained of. Compl., Exhibit 1. Mr. Dufresne did not request call recordings in his QWR, although they would have also been relevant to the errors he alleged occurred.

The payment errors Mr. Dufresne complained of and the documents he requested in the QWR were well within the scope of §1024.35(b), in fact, term "error" within the regulation refers specifically to, amongst other things, the "(1) failure to accept a payment (2) failure to apply an accepted payment…, and (3) failure to credit a payment to a borrower's mortgage

loan…" 12 C.F.R. § 1024.35(b)(1)-(3). Furthermore, the Second Circuit has made clear that a servicer's obligation under §1024.35(b) is broad, covering "any error that has some connection with or pertains to loan servicing." *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 383–84 (2d Cir. 2022).

In support of its argument that Mr. Dufresne's request for call and system logs is improper under RESPA, Defendant relies on non-binding cases that are readily distinguishable. The cases involved requests concerning loan origination, loan modifications, or other financial documents, and unlike Mr. Dufrene's requests were unrelated to the acceptance and processing of payments (the definition of "servicing" under RESPA, 12 U.S.C. § 2605(i)(3)). *See Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1349 (S.D. Fla. 2016) (QWR/RFI related to a loan modification); *Philistin v. Ocwen Loan Servicing, LLC*, No. 19-CIV-80048, 2019 WL 1474329, at *3 (S.D. Fla. Mar. 18, 2019), report and recommendation adopted, No. 9:19-CV-80048, 2019 WL 1486855 (S.D. Fla. Apr. 4, 2019) (QWR related to loan and note holder, the master servicer, current servicer, and call logs and communications); *Layne v. Ocwen Loan Servicing, LLC, No. 4:17-CV-4*, 2018 WL 1524608, at *8 (E.D. Tenn. Mar. 28, 2018) (QWR requested generic financial documents related to the loan's origination). Mr. Dufresne's QWR is within the scope of even the most conservative definition of "servicing," and Defendant was obligated to provide a complete response.

### B. Defendant Failed to Conduct a Reasonable Investigation as Required by Regulation X.

Mr. Dufresne has alleged in detail that Defendant failed to conduct a "reasonable investigation" as required under RESPA and Regulation X, 12 C.F.R. 1024.35. Compl., ¶¶ 67-69. Defendant's response fell far short of the statutory requirement. A "reasonable investigation" under Regulation X requires more than a cursory denial; it requires a good faith

review of the borrower's account and supporting records, which results in "a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, and contact information." 12 C.F.R. § 1024.35(e)(1)(i)(A)–(B). In addition, if the servicer concludes no error occurred, it must supply "documents relied upon by the servicer to determine that no error occurred." 12 C.F.R. § 1024.35(e)(4).

In its response, Defendant failed to even indicate that no error occurred. *See* Def.'s Exhibit A. Rather than addressing the specific errors identified in Mr. Dufresne's QWR (rejected payments, inconsistent account information, and lack of notice regarding payment issues), Defendant simply stated that it had not received a payment since December 5, 2022 and deflected responsibility to Mr. Dufresne's bank. *See* Def.'s Exhibit A. This assertion evidences the lack of a reasonable investigation as it directly conflicts with both Defendant's own records and the bank statements Mr. Dufresne enclosed, which showed a $1,356.47 payment submitted on December 1, 2022, and debited on December 6, 2022. *See* Compl., Exhibit 1. Defendant also ignored his requests for call logs, system notes, and a breakdown of fees and costs, and provided no explanation for the four rejected payments between January and April 2023. Def.'s Exhibit A.

Mr. Dufresne has properly pleaded that by failing to reconcile its own transaction history with the evidence Mr. Dufresne provided, refusing to provide basic servicing records, and offering only conclusory statements, Defendant failed to comply with its obligations under § 1024.35. Compl., ¶¶ 45-51. *See Renfroe v. Nationstar Mortg., LLC,* 822 F.3d 1241, 1245 (11th Cir. 2016) (finding that plaintiff properly stated a RESPA claim by alleging that servicer did not offer a written explanation stating the reasons for its determination, and that its investigation

was unreasonable and prevented it from discovering and appropriately correcting the account error in violation of §1024.35).

### C. **Mr. Dufresne Properly Pleaded Damages under RESPA.**

Pursuant to RESPA, 12 U.S.C. § 2605(e), Mr. Dufresne has alleged both actual damages, including emotional distress, and statutory damages under RESPA, based on Defendant's pattern or practice of misconduct. Compl., ¶ 59-66, 69. Defendant argues that all the alleged damages relate to the foreclosure and are not linked to Defendant's alleged failure to respond to his QWR. Def.'s Memorandum of Law, p. 8. Although the foreclosure predates Mr. Dufresne's QWR, the payment errors he asserted in the QWR are what precipitated the foreclosure. Defendant's argument "ignores the fact that a notice of error triggers present RESPA obligations with respect to past error. *See* 12 U.S.C. § 2605(e) (creating a '[d]uty of loan servicer to respond to borrower inquiries'...). This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation… *See id.* § 2605(e)(2)." *Renfroe v. Nationstar Mortg., LLC, supra,* at 1246 (citing RESPA statute). Mr. Dufresne, just as the plaintiff in *Renfroe,* has alleged that Defendant failed to comply with RESPA *after* he sent a notice of error, and that this failure harmed him. Furthermore, Mr. Dufresne can distinguish his distress relative to the QWR from that caused by the foreclosure. *See Tanasi v. CitiMortgage, Inc.,* 257 F. Supp. 3d 232, 270 *(*D. Conn. 2017*)* (court required distinction between distress from foreclosure and that from RESPA violation). Defendant's refusal to provide the requested information caused Mr. Dufresne additional mental distress, particularly because the response included conflicting information about his most recent payment with almost no documents demonstrating that Defendant conducted an earnest investigation.

Page **9** of **16**

It would defeat the purpose of RESPA to disallow damages because there was a pending foreclosure at the time a borrower sent a QWR. Defendant's unsatisfactory and incomplete response to the QWR, in which it flatly refused to provide information Mr. Dufresne was entitled to, distinctly deepened his distress.

Mr. Dufresne also alleged that "Defendant's actions were part of a pattern and practice of misconduct, illustrated by at least 22 complaints received by Consumer Financial Protection Bureau, between 2023 and present day, from VA borrowers alone regarding Defendant's failure to notify borrowers of a change in payment, failure to maintain accurate records regarding payments, and failure to make accurate calculations of necessary payments." Compl. ¶ 67. Mr. Dufresne alleged statutory damages consistent with a pattern or practice of misconduct by citing public complaints by other borrowers who experienced similar issues with Defendant. *See Tanasi* at 272, (finding that CFPB complaints sufficient to state a claim for statutory pattern or practice damages under RESPA). Because Mr. Dufresne has properly alleged both a violation of RESPA and damages caused by that violation, the Court should deny Defendant's motion to dismiss Count I.

II.   **Mr. Dufresne's CUTPA Allegations Are Broader Than and Independent of RESPA**.

   A.   <u>**Applicable Standard of Law**</u>

CUTPA is a broad remedial statute. *Artie's Auto Body v. Hartford Fire Ins. Co.*, 317 Conn. 602, 623 (2015). It may be used to remedy violations of a law, and the ascertainable loss suffered as a result, even when that law contains no private right of action, or even if the principles of the law were violated even if the law itself technically was not. *See, e.g., Eder Bros., Inc. v. Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 380-82 (2005).

For a baseline claim of unfair trade practices, the Connecticut Supreme Court has provided: "[W]e have adopted [certain] criteria set out in the cigarette rule by the [F]ederal [T]rade [C]ommission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some [common-law], statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businesspersons].... All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three... Thus a violation of CUTPA may be established by showing either an actual deceptive practice ... or a practice amounting to a violation of public policy." *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 790 (2019) (footnote omitted; citations omitted; internal quotation marks omitted).

Furthermore, a practice is "deceptive" under CUTPA if each of the following is true: "First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material – that is, likely to affect the consumer's decisions or conduct." *Caldor, Inc. v. Helson*, 215 Conn. 590, 597 (1990) (internal quotation marks and citations omitted). "Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." *Ramirez v. Health Net of the Northeast., Inc.*, 285 Conn. 1, 19 (2008).

"Once a violation of CUTPA has been established, evidence that the defendant has acted with reckless indifference to the rights of the plaintiff or has committed an intentional and

wanton violation of those rights is a necessary prerequisite to the award of punitive damages." *Whitaker v. Taylor*, 99 Conn. App. 719, 733 (2007).

### B. **Mr. Dufresne's CUTPA Claims Are Based on Conduct Both Covered and Not by his RESPA Claim.**

Mr. Dufresne alleged that Defendant engaged in unfair trade practices with respect to its violation of RESPA and Regulation X, as outlined in detail in Section I. However, Mr. Dufresne's CUTPA claims go far beyond the RESPA violation. He provides a comprehensive list of Defendant's unfair trade practices throughout the complaint and specifically at Compl., ¶¶ 75-84. This conduct includes:

- Refusing to apply Mr. Dufresne's payments to his account, in violation of Regulation Z;

- Misleading Mr. Dufresne by providing conflicting and inaccurate account and payment information both in writing and over the phone;

- Deliberately withholding information to which it had exclusive access, concealing information relevant to Mr. Dufresne's foreclosure defense and attempts to reinstate his account;

- Charging late fees to Mr. Dufresne's account despite his timely payments;

- Refusing to remove improper fees from Mr. Dufresne's account balance;

- Failing to notify him of changes to his monthly payment amount and eventually forcing him into default;

- Prosecuting a foreclosure action against Mr. Dufresne, while making it impossible for him to reinstate his account by providing him inconsistent information regarding his payments and account;

- Ignoring the VA foreclosure moratorium in effect at the time it started a foreclosure against Mr. Dufresne; and

- Charging him for attorney's fees and costs related to the wrongful foreclosure it filed against him.

Even though a plaintiff needs only to meet one of the three criteria of the cigarette rule to adequately plead a violation of CUTPA based on unfair trade practices, Mr. Dufresne's

allegations satisfy all three. Defendant's conduct offends public policy as established by RESPA, Regulation X, the Truth in Lending Act (TILA), Regulation Z, and VA guidance.[2] *See* Compl. ¶¶ 72-82; *see also*, *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 791-92 ( a conscious decision by mortgage servicer to depart from industry norms established by federal guidance violated CUTPA); *see also,* Norboe *v. Wells Fargo Bank, N.A.*, 2018 WL 1137575, *15 (Conn. Super. Ct., Jan. 31, 2018) (*Ecker, J.*) (CUTPA prohibits "pattern of disregard and even indifference with respect to fundamental rights of privacy and homeownership protected by well-established public policy"). Additionally, Mr. Dufresne pleaded that Defendant's conduct here was part of a larger pattern with respect to homeowners, evidenced by 22 similar complaints received by the CFPB related to Defendant's conduct, which is a further violation of public policy. Compl. ¶ 69.

Furthermore, Mr. Dufresne's allegations satisfy the second prong of the cigarette rule, in that there is nothing ethical about changing a borrower's monthly mortgage payment without any notice causing a default, repeatedly misleading him into believing the payment issues were resolved and his mortgage reinstated, only to turn around and start a foreclosure action against him.

Lastly, Mr. Dufresne's allegations satisfy the third prong of the cigarette rule in that Defendant's actions caused a substantial injury: (1) an "ascertainable loss" via improper fees and inflation of his debt, and (2) emotional damages. *See, e.g.,* Compl. ¶¶ 86-87.

Mr. Dufresne's allegations are not only sufficient for the sake of an unfair practices claim; they are enough to merit an award of punitive damages. For example, Defendant knowingly

---

[2] Defendant argues that Mr. Dufresne seeks an end-run around a time-barred TILA claim by including it in his CUTPA claim. Not so. He includes Defendant's TILA violation as further evidence of its unfair practices and pattern of disregarding public policy. The fact that the TILA statute of limitation has run does not erase Defendant's misconduct.

misled Mr. Dufresne regarding his required payment amount and account status and deliberately inflated his debt through its misconduct. Compl. ¶ 88. Defendant willfully violated public policy outlined in RESPA, TILA, and the VA foreclosure moratorium, blatantly disregarding Mr. Dufresne's rights as a borrower and as a veteran with a VA loan, and did so without reasonable justification or excuse. *Id.* ¶ 89. Defendant argues that because the VA foreclosure moratorium was "strongly encouraged" rather than mandatory, its decision to prosecute foreclosure during that period cannot support a CUTPA claim. Def.'s Memorandum of Law, p. 12. This argument misses the mark. CUTPA liability does not turn on whether conduct violates a binding statute; it is enough that the conduct offends established public policy or is oppressive, unscrupulous, or unethical. *Cenatiempo v. Bank of Am., N.A.*, *supra,* 333 Conn. 769, 790 (2019). Here, Defendant's foreclosure directly contravened clear federal guidance aimed at protecting veterans from unnecessary foreclosure during a national crisis. The VA's express guidance reflects a strong public policy to safeguard vulnerable borrowers, especially disabled veterans like Mr. Dufresne, from foreclosure harm. Defendant's conscious disregard of that guidance is precisely the kind of conduct CUTPA prohibits.

Because of Defendant's reckless indifference to Mr. Dufresne's well-being and his desire to resolve the payment errors, and because it intentionally continued its conduct despite being on notice of the errors, punitive damages are warranted. *See Whitaker v. Taylor*, *supra*, 99 Conn. App. at 733; Compl. ¶¶ 40-51.

### C. **Defendant's Arguments Ignore Case Law and Mr. Dufresne's Actual Pleadings**.

In arguing for dismissal of Mr. Dufresne's CUTPA claims, Defendant argues that the CUTPA claims are only derivative of a deficient RESPA claim. Def.'s Memorandum of Law, p. 11. This argument ignores the litany of unfair and deceptive conduct, detailed *supra*, that goes

beyond Defendant's failure to conduct a reasonable investigation and provide Mr. Dufresne with the account information he requested. Moreover, Defendant's argument is premised on the notion that its conduct must be sufficient to bring some other sort of claim in order to also violate CUTPA, an argument contrary to the case law. *See, e.g., Eder Bros., Inc. v. Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 380-82 (2005)(finding that plaintiff had standing to bring a CUTPA claim alleging that competitor's violation of the Liquor Control Act was a violation of CUTPA, even though the Act had no private right of action). Even if one accepted *arguendo* Defendant's premise, Mr. Dufresne's incorporation of the other valid counts only bolsters the public policy prong of his CUTPA claim.

Defendant argues that Mr. Dufresne failed to allege an ascertainable loss. Def.'s Memorandum of Law, p. 12. "An ascertainable loss is a loss that is capable of being discovered, observed or established...The term loss necessarily encompasses a broader meaning than the term damage, and has been held synonymous with deprivation, detriment and injury...To establish an ascertainable loss, a plaintiff is not required to prove actual damages of a specific dollar amount.... [A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known." (Citations omitted; internal quotation marks omitted.) *Landmark Inv. Group, LLC v. CALCO Const. and Dev. Co.*, 318 Conn. 847, 882 (2015)*, citing Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.,* 287 Conn. 208, 218 (2008).

Mr. Dufresne's allegations of loss are more than speculative and fit well within the broad category of "ascertainable loss." He alleged as a direct and proximate result of Defendant's wrongful conduct he sustained actual damages including, but not limited to, inflated debt, attorney's fees, default-related fees, and late fees charged to his account. Compl. ¶¶ 86, 88. These allegations regarding fees are enough to substantiate his claim for an ascertainable loss

against Defendant. *See, e.g., Cenatiempo v. Bank of Am., N.A.*, *supra*, 333 Conn. at 803 (plaintiffs' claims of inflated principal balance and lost opportunity sufficient for CUTPA).

Further, while Defendant argues that a CUTPA plaintiff may not base their claim solely on emotional damages, citing to *Di Teresi v. Stamford Health Sys., Inc.*, 149 Conn. App. 502, 512 (2014), the Connecticut Supreme Court has provided in cases like *Cenatiempo* that emotional damages may be recovered in addition to whatever else the plaintiff alleges is an ascertainable loss. *See generally, Cenatiempo v. Bank of Am., N.A., supra*, 333 Conn 769. Given that he satisfied the standard for ascertainable loss with allegations of improper fees, Compl. ¶¶ 86,88, he may also seek recovery of emotional damages. Defendant's arguments for avoiding CUTPA liability fail Its conduct is precisely the kind of abusive servicing practice that CUTPA was designed to prevent, and its motion to dismiss Count II should be denied.

## CONCLUSION

For the foregoing reasons, Mr. Dufresne requests the Court deny Freedom Mortgage's Rule 12(b)(6) Motion to Dismiss.

Respectfully submitted,

PLAINTIFF GERALD DUFRESNE

/s/ Loraine Martinez Bellamy
Loraine Martinez Bellamy (ct29220)
Theresa Dudek (ct31527)
Connecticut Fair Housing Center
60 Popieluszko Court
Hartford, CT  06106
Tel: (860) 263-0732
Fax: (860) 247-4236
Lmartinez@ctfairhousing.org
Tdudek@ctfairhousing.org